UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY PATRICK ALMAN,
MICHAEL BARNES, and
THE TRIANGLE FOUNDATION,

                Plaintiffs,                         No. 08-CV-14168

vs.                                         Hon. Gerald E. Rosen

DEPUTY KEVIN REED,
OFFICER RANDY THIVIERGE,
SERGEANT ROBERT SWOPE,
WAYNE COUNTY and
THE CITY OF WESTLAND,

                Defendants.
_____/

OPINION AND ORDER REGARDING DEFENDANTS'
MOTIONS FOR DISMISSAL AND SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on        October 7, 2010       

PRESENT:   Honorable Gerald E. Rosen
                     United States District Chief Judge

## I.  INTRODUCTION

This Section 1983 civil rights action arises out of the arrest and prosecution of

Plaintiff Randy Patrick Alman, a gay man, and the seizure of the vehicle driven by him

on October 12, 2007 which was owned by his domestic partner, Plaintiff Michael Barnes.

Alman was arrested by Wayne County Deputy Sheriff Kevin Reed who was, at the time,

working as an undercover "decoy" as part of the Metro Street Enforcement Team task force ("MSET") which was conducting a surveillance operation at Hix Park in Westland, Michigan following complaints of possible lewd activity and public sex occurring in the park. Sergeant Robert Swope and Officer Randy Thivierge are police officers with the Westland Police Department who were also assigned to MSET. Sergeant Swope supervised the Hix Park surveillance operation on October 12, 2007. Officer Thivierge and another Westland Police Officer, John Buffa,[1] were the surveillance and backup officers.

After the charges against Randy Alman were dismissed, Alman, Barnes and The Triangle Foundation[2] filed the instant Section 1983 action claiming that Deputy Reed, Sergeant Swope, Officer Thivierge, Wayne County, and the City of Westland violated Alman's and Barnes's constitutional rights under the Fourth and Fourteenth Amendments. They, along with The Triangle Foundation, also allege a violation of First Amendment rights. Alman also alleges a state law claim of malicious prosecution and Barnes alleges a state law claim of abuse of process.

Following the close of the extended period of discovery, the Wayne County

---

[1] Officer Buffa was at one time a named defendant in this action. By stipulation of the parties, Plaintiffs' claims against Buffa were dismissed, with prejudice, on January 8, 2010.

[2] The Triangle Foundation is a state-wide civil rights organization that seeks to protect and promote the civil rights of gay, lesbian, bisexual, and transgender people. [First Amended Complaint, ¶ 5.]

Defendants (Wayne County and individual Defendant Reed) and the Westland

Defendants (the City of Westland and individual Defendants Swope and Thivierge) filed

motions for dismissal and for summary judgment. Plaintiffs responded to both motions

and the Defendants replied. Having reviewed the parties' briefs, the accompanying

exhibits, and the record as a whole, the Court finds that the pertinent facts and legal

contentions are sufficiently presented in these materials, and that oral argument would

not assist in the resolution of this matter. Accordingly, the Court will decide the motion

"on the briefs." *See* Eastern District of Michigan Local Rule 7.1(f)(2). This Opinion and

Order sets forth the Court's rulings.

## II. FACTUAL BACKGROUND

Plaintiffs Randy Alman and Michael Barnes are gay men and domestic partners

who in October 2007, resided in Yorktown, Indiana. On October 12, 2007, Alman was

in Michigan to assist his mother who was moving from her home in a trailer park located

in Westland to an apartment in Garden City. [Plaintiff's Dep., pp. 23, 65-66.]

ALMAN'S ARREST

At approximately 1:00 p.m., on October 12, 2007, Alman decided to take a break

from the moving activities and go for a walk. [5/20/08 Hearing Tr., County Ex. 13, p.

48.] He drove to Hix Park, which was approximately a half-mile away from his mother's

trailer park. Plaintiff's Dep., p. 60. Hix Park is a nature park with maintained trails. It

has an entrance drive that leads to a pavilion and a circular parking area. Alman testified

that when he arrived at the park, he parked and sat in his car for a while listening to the radio until someone jogging through the park caught his eye. *Id.* at 72. He then exited his car and went to sit at a picnic table under the pavilion. *Id.*

Meanwhile, prior to October 12, 2007, Sergeant Robert Swope and Officers Randy Thivierge and John Buffa of the Westland Police Department, and Wayne County Deputy Sheriff Kevin Reed were detailed to a task force known as the Metro Street Enforcement Team ("MSET"). Sergeant Swope supervised the MSET team. [Swope Dep., p. 12.] Swope testified that in October 2007, Lieutenant Engstrom of the Westland Police Department who was Swope's supervisor, requested MSET to conduct surveillance at Hix Park because he had received complaints about lewd and possible unlawful sexual activity in the park. *Id.* at 12. He testified that Lt. Engstrom informed him that Department of Public Service workers who were emptying the trash cans in the park were finding empty condom wrappers and pornographic materials in the garbage cans. *Id.*

Swope testified that he personally conducted one day of visual surveillance prior to October 12, 2007 and after that first day, reported to Engstrom that he had not observed any sexual activity in the park. *Id.* at 25-26. Though they did not observe any ongoing sexual activity, other MSET team members found used condoms scattered along the trails in the park. *See* Reed Dep., p. 30. Engstrom, therefore, instructed Swope to continue the surveillance and do a "decoy" operation. Swope Dep. at 26.

Accordingly, on October 12, 2007, the MSET team went to Hix Park to conduct a decoy operation. Swope supervised the operation; Deputy Reed was the decoy and Officers Thivierge and Buffa were the surveillance and backup officers. *Id.* Swope monitored the operation from his car; Officers Thivierge and Buffa were in plain clothes and surveilled on foot. Swope testified that he picked Deputy Reed to be the decoy because he had experience working with the morality unit in Wayne County for several years. *Id.* at 23.

When the officers arrived at the park on October 12, they observed Alman sitting on a picnic bench underneath the pavilion. Reed Dep., p. 34. Reed walked to the pavilion and sat down at the picnic table to the left of Alman and engaged him in conversation. Alman Dep., p. 73; Reed Dep., p. 37.

According to Alman, Reed asked him what he was doing in the park and Alman told him he was just taking a break from moving his mother into her new residence. Alman Dep., p. 74. Alman testified that he also told Reed that he and his partner had just moved back (to the midwest) from California to Indiana. *Id.* at 75.[3] The two continued talking a while.[4] According to Reed, Alman asked him if he had found the park on a

_____

[3] Reed testified that although Alman did not tell him he was gay, because Alman had mentioned that he had a "partner," he assumed that meant he was homosexual. Reed Dep., p. 35.

[4] The precise content of the conversation was between Alman and Reed is disputed. According to Reed, Alman told him that he liked to come to the park for recreation. Reed Dep., p. 36. Alman, however, testified in his deposition that although he grew up in Westland and lived there for several years and had an aunt who lived a

website called squirt.org. Reed Dep., p. 34; *see also* Alman testimony at the Hearing on

the Motion to Dismiss his criminal charges, 5/20/Hrg. Tr. p. 52. Reed told him he did not

remember what website he found it on and that he had never heard of squirt.org. *Id.*[5]

Although Alman testified that he did not know if Reed "was checking [him] out," and he

himself was "not at first" sexually interested in Reed, he admitted that he noticed that

Reed's tight jeans "prominently show[ed] off his package." *Id.* at 74.[6]

　　　　Reed testified that he told Alman that he had been in the park earlier in the day to

look for deer and was there that afternoon "because it was a big park." Reed Dep., p. 37;

*see also* Alman hearing testimony, 5/20/08 Hrg. Tr., p. 49. Reed said Alman told him his

mother had lived close by and deer had frequently been to her front yard. Reed Dep., p.

37. According to Reed, shortly after that, Alman invited him to go for a walk down the

trail with him: "[I]f you want we can go take a walk down the trail and see if we c[an]

find a big buck." *Id.* (Alman disputes having invited Reed to go for a walk with him.

Alman testified that he merely got up from the picnic table and said he was going for a

---

short way down Hix Road from the park, he had never been to Hix Park before the
afternoon of October 12, 2007. Alman Dep., pp. 23-25, 60-61.

　　[5] In conjunction with the preparation of his report of the events of October 12,
Reed did further investigation and discovered that squirt.org is a site intended for male
homosexuals to find and arrange places to meet and have sexual encounters. *See* Arrest
Report, County Ex. 4.

　　[6] As Alman explained at the Hearing on the Motion to Dismiss the criminal
charges against him, "Most gay men wear tight jeans to show off their package." 5/20/08
Hrg. Tr., p. 50.

walk and then leaving the park, and Reed followed him. Alman Dep., pp. 75-76.)

In any event, it is undisputed that Alman began walking down the trail and Reed followed him. According to Alman, after they had been walking a short distance, Reed asked him if there was a more secluded spot to go to. Alman Dep., p. 77. (According to Reed, after they had been walking a short distance, Alman simply veered off to the right and stopped in a small clearing and he followed. Reed Dep., p. 37.)[7]

Alman testified that he believed Reed was flirting with him. *Id*. at 79. While standing in the clearing, the two men talked for a while. Reed then told Alman that he was a little nervous; that "he was new to this." Reed Dep., p. 38; Alman Dep., p. 77. The two were standing a foot and a half to two feet apart when suddenly Alman reached out and touched the front of Reed's crotch. Reed Dep., p. 40 (In Alman's words, he "brushed" the zipper of Reed's pants. Alman Dep., pp. 82-83). Not having expected it, Reed took a step back. Reed Dep. at 41; Alman Dep. at 83.

When Reed took a step back, Alman went down on one knee, at crotch level to Reed. Reed Dep. at 41-43; Alman Dep. at 84.[8] Reed then identified himself as a police officer and told Alman he was under arrest. Reed Dep., p. 44.

---

[7] According to Reed, Alman told him he had been to that spot before and that it was safe because you could hear people as they were walking down the trail and the area was obscured by trees so nobody could see them. Reed Dep., p. 38.

[8] Alman testified that he got down on his knee to pretend to tie his shoe "just to show non-agression. That everything was okay, that it was cool." Alman hearing testimony, Hrg. Tr., p. 58.

After he placed Alman under arrest, Reed directed Alman to get up and walk with him back down the trail. *Id.* They were met at the mouth of the trial by the pavilion by Officer Buffa who placed Alman in handcuffs. *Id.* at 46. Buffa patted Alman down to see if he had any weapons on him and Reed reported to Swope what had transpired. *Id.*[9] A squad car then came and transported Alman to the Westland Police Department. *Id.* at 48. The car that Randy Alman had driven to Hix Park was towed and impounded pursuant to the nuisance abatement statutes. *Id.* at 48.[10]

Deputy Reed testified that after Alman was taken to the police department, he resumed surveillance in the park. *Id.* at 49. He walked the trails for a little while and during that time, he encountered another male individual. *Id.* Though the man's conversation with Reed indicated to Reed that the man was gay, no arrest was made as there was no sexual contact and Reed saw no lewd activity. *Id.* at 50. According to Reed, he just had a general conversation with the man and, although in that conversation, the man brought up the squirt.org website, he had no reason to arrest him. *Id.* After

---

[9] Although Reed had been wired with a transmitter, the transmitter had not worked.

[10] At the time, M.C.L. § 600.3801, provided that

Any. . . vehicle. . . used for the purpose of lewdness,. . . or used by or kept for the use of prostitutes or other disorderly persons. . . [is] declared a nuisance. . . and shall be enjoined as abated as provided in this act and as provided in the court rules. . . .

*See* Plaintiff's Ex. D.

Reed finished his assignment in the park that day, he went back to the Westland Police Department office. *Id*.

Alman meanwhile was placed in a cell at the Westland Police Department and held for two hours. He was initially booked by Officer Yudt. Officer Thivierge later wrote Alman an Appearance Ticket, charging him with Accosting and Soliciting and Fourth Degree Criminal Sexual Conduct ("CSC4"), the lowest CSC charge.[11] Alman posted $150.00 bond and was released the same day.

---

[11] The crime of "accosting and soliciting" in Michigan is set forth in M.C.L. § 750.448:

> A person 16 years of age or older who accosts, solicits, or invites another person in a public place. . . by word, gesture, or any other means. . . to do any. . . lewd or immoral act, is guilty of a crime punishable as provided in section 451.

M.C.L. § 750.448 (2008).

As was set forth in M.C.L. § 750.520e,

> (1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and any of the following circumstances exist:
>
> * * *
>
> (b)(v) [w]hen the actor achieves the sexual contact. . . by the element of surprise.
>
> (2) Criminal sexual conduct in the fourth degree is a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $500.00, or both.

M.C.L. § 750.520e

THE SEIZURE OF ALMAN'S VEHICLE

On the day of Alman's arrest, he drove his partner, Michael Barnes's Volkswagen to Hix Park. Once the vehicle was towed and Alman was released from the Westland Police Department, Alman was given a "Notice of Impoundment of Vehicle Nuisance Abatement" form; a "Vehicle Seizure Push-Off/Nuisance Abatement/Drag Racing, Notice of Seizure and Intent to Forfeit" form; and a "Street Enforcement Team Notice of Impoundment of Vehicle Nuisance Abatement" form. *See* City Defendants' Ex. 6.

Michael Barnes came to Michigan to retrieve Alman and his car. The Vehicle Seizure Push-Off/Nuisance Abatement/Drag Racing form states, in pertinent part:

> It has been determined that the vehicle described above was seized and is held subject to abatement proceedings pursuant to an arrest for a state misdemeanor or comparable city ordinance violation involving lewdness, assignation, and/or solicitation for prostitution. . . . This matter will be reviewed by the Wayne County Prosecutor's Office to determine if a nuisance abatement action will be filed in Circuit Court under MCL 600.3801 et seq. seeking to abate/forfeit the motor vehicle as a nuisance. The OWNER of the vehicle must contact the Wayne County Prosecutor's Office (Monday-Friday, 8:30 a.m. - 4:30 p.m.) at (313) 224-5743 after 3 business days but no longer than THIRTY (30) days of receiving this Notice of Seizure to claim the vehicle. The OWNER may contest the seizure <u>or</u> enter into a settlement agreement to re-claim the vehicle. The Redemption Fee for settlement: $900.00 (1st Seizure), $1,800.00 (2nd Seizure), $2,700.00 (3rd Seizure), plus towing and storage. **Failure to file a claim of interest <u>or</u> enter into a settlement agreement within 30 days shall cause the listed property to be declared forfeited and disposed of according to law.** This forfeiture proceeding is separate from any related criminal proceeding.

City Defendants' Ex. 6.

The Notice of Impoundment of Vehicle Nuisance Abatement form contains

substantially the same information and was given to Alman at the time of his release, as well. *Id.,* p. 2.

On October 15, 2007, Barnes, as the vehicle owner, went to the police station and received the notice and further received standard information on the seizure and his rights. On October 17, 2009, Barnes elected to redeem his vehicle without contesting the seizure and signed an acknowledgment of the release of the vehicle and Barnes's payment of the $900.00 redemption fee. The acknowledgment letter stated, in relevant part:

> The Wayne County Prosecutor's Office has received a redemption payment of $900.00 payable to the Wayne County Prosecutor's Office. Based on the payment of the redemption cost, the Wayne County Prosecutor's Office is authorizing the release of the above-named vehicle and associated impound lien. The owner of the vehicle must request that the towyard operator notify the "Notification and Crime Reporting Unit (formerly T.C.R.U.) that the impound lien is to be released. The owner is responsible for the costs of towing and storage payable to the towing company. Should another violation of the nuisance abatement laws of this state involving this or another vehicle owned by you and driven by yourself or Randy Patrick Alman, the settlement fee for redemption of the vehicle will be increased. **This precludes any action in this case regarding the vehicle and constitutes a final settlement of the civil nuisance abatement case.** This settlement is independent and has no effect on any criminal charges that may arise from the same incident.

*Id.*, p. 3.

The letter was signed by Barnes as owner of the vehicle and by James Gonzalez, Chief of the Special Operations Division of the Wayne County Prosecutor's Office.

With the letter in hand, at approximately 2:00 p.m. on October 17, 2007, Barnes

went to the Westland Police Department to get his car.  However, when he arrived at the station, he was told that the only person authorized to release the vehicle was Sergeant Jedrusik and he was not at the station at that time.  (Sergeant Jedrusik's contact information had been provided to both Alman and Barnes, *see* City Defendants' Ex. 6, p. 1, and they were both told to call before coming to the station to get the car.  Barnes did not call before going to the station.)  The desk officer told Barnes that Officer Thivierge could release the vehicle but he would not be in the station until 6:00 p.m.  Upon hearing this, Barnes went to the City of Westland Mayor's office to complain.

Barnes did not get in to see the mayor.  When he did not get further attention, he called a radio station and then, the Wayne County Prosecutor's Office.  When Barnes began to yell he was asked to leave the Mayor's office by two police officers.  Barnes left the office around 3:30-4:00 p.m. and went to Alman's son's house.  From there, Barnes contacted The Triangle Foundation.  He then went back to the police station with Georgia Carpenter, an assistant from Triangle around 6:00 p.m.  *See* Barnes Dep., pp. 48, 50, 54-58.]  Sergeant Swope happened to be at the station with Deputy Reed when Barnes came in.  Swope contacted Sergeant Jedrusik by phone and Jedrusik authorized them to release the car to Barnes.

THE CRIMINAL CHARGES AGAINST, AND PROSECUTION OF, ALMAN

As indicated, Alman was initially issued an Appearance Ticket charging him with violating M.C.L. § 750.448, Soliciting and Accosting; and M.C.L. § 750.520, CSC4.

Luke Skywalker, the assistant county prosecutor assigned to the 18th District Court,

testified that since the charges were high misdemeanors, he needed a warrant request

approved by the Wayne County Prosecutor's Office prior to appearing.  Skywalker Dep.,

pp. 7-8.  He, therefore, adjourned the ticket.  *Id.*  He further testified that he recalled that

Rudy Serra, Plaintiffs' attorney, told him he planned to contact Kym Worthy to

determine whether the case against Alman was in line with  the County Prosecutor's

policy on prosecutions for sexual activity in public places.  *Id.*  That policy provides in

pertinent part:

> The Prosecutor's Office receives a large number of warrant requests and
> vehicle seizure requests in cases involving allegations of sexual conduct in
> public places. This policy statement is intended to provide local police
> agencies, criminal defense attorneys and the public in general with the
> standards used by the Prosecutor in reviewing those requests.
>
> * * *
>
> So that all police agencies in Wayne County have clear guidelines when
> charges may be authorized and when vehicle seizures will be initiated, the
> Prosecutor's Office sets forth the following standards of review. . .

*See* Plaintiff's Ex. J.

The standards are then set forth in the policy statement under separate subheadings

for various illicit sexual activities and the particular offenses subject to the particular

policy standard of review:

Solicitation of a Prostitute

> When an individual offers money for sex, whether to a member of the
> public or to an undercover police officer, the misdemeanor charge of

offering to engage the services of a prostitute pursuant to MCL 750.449e or soliciting and accosting pursuant to MCL 750.448 will be brought. When a vehicle is used in the solicitation, the Prosecutor will pursue seizure of the vehicle.

## Sex in a Public Place

When a sexual act is performed in a place where it is likely to be witnessed by members of the unsuspecting public, the misdemeanor charge of lewd and lascivious conduct will be brought pursuant to MCL 750.335. When a vehicle is used in such an act, the Prosecutor will pursue seizure of the vehicle. Particular emphasis will be placed on preventing such acts in locations where the acts are subject to be witnessed by children.

## Indecent Exposure/Obscene Conduct

An unsolicited sexual act or exposure to a member of the public or an undercover police officer will bring a misdemeanor charge of indecent exposure pursuant to MCL 750.335a[12] or disorderly person-obscene conduct pursuant to MCL 750.167(f).[13] **Charges will not be pursued by this office if the officer's conduct was designed to make the individual believe the act was invited or consensual.**

## Annoying Persons

Vehicle seizure will not be pursued by the Prosecutor in cases where the only charge is a violation of the City of Detroit's "Annoying Persons" ordinance or a similar ordinance of another municipality. The determination as to whether the offender must face a charge of ordinance violation rests exclusively with the local police agency and municipal attorney. . . .

---

[12] M.C.L. § 750.335a makes it a crime to "knowingly make any open or indecent exposure of his or her person or of the person of another."

[13] For purposes of the criminal disorderly conduct statute [M.C.L. § 750.168] Section 750.167(f) provides that a "disorderly person" includes "a person who is engaged in indecent or obscene conduct in a public place."

*Id*. (emphasis and footnotes added).

The policy statement concludes with this caveat:

> **This policy does not govern the enforcement of municipal ordinances. That responsibility rests with the local police agencies and municipal attorneys. Nothing in this policy is intended to alter the practices of local police agencies in enforcing violations under their respective local ordinances.**

*Id*. (emphasis added).

Skywalker testified that he was contacted by someone within the Wayne County Prosecutor's Office, not the prosecutor herself, and was told to dismiss the ticket against Alman, but was given no further information for the dismissal. Skywalker Dep., p. 18. The state charges, accordingly, were dismissed on the prosecutor's motion. However, as indicated the County policy, by its own language, does not apply to the enforcement of local ordinances by local police. Therefore, after consulting with Westland's City Attorney, Officer Thivierge[14] issued Alman an appearance ticket for violating Westland's disorderly conduct[15] and assault and battery ordinances.

Alman, through counsel, filed a motion to dismiss the charges. A hearing on Alman's motion was held in the 18th District Court in Westland on May 20, 2008. At this hearing, Judge Bokos dismissed the disorderly conduct charges, because, "in [his] opinion, . . . for there to be disorderly conduct, there has to be some exposure of bodily

---

[14] Deputy Reed was off on medical leave when Thivierge wrote the ticket.

[15] The City of Westland's disorderly conduct ordinance is substantially the same as Michigan's disorderly conduct statute.

parts." [5/20/08 Hearing Tr., p. 7.] The court then conducted a lengthy evidentiary hearing on the assault and battery charge at which he heard the testimony of both Deputy Reed and Plaintiff Alman as to their respective actions on October 12, 2007. Alman's counsel argued that his client had been entrapped and attacked Deputy Reed's probable cause upon which the ticket was written. He also argued consent. The court heard testimony on all of these issues. At the conclusion of the hearing, the court determined that the case should proceed to trial, explaining:

> . . . An assault and battery can be accomplished by an offensive touching of another person without their consent and . . . doesn't necessarily have to result in injury, but it can be of such a nature as to be offensive to the person. . . who has had the contact and it also is against that person's will. I mean, that is the basic definition of assault and battery.

> In this case, Officer Reed has testified that he [wa]s, while working in an undercover capacity, looking for individuals who might conduct themselves in such a lewd way as to violate the law.

> Now, I have to agree that the circumstances may well have been such that Mr. Alman was led to believe that he was involved in a relationship or is about to get involved in a situation with a consenting individual, but that is not what Officer Reed believed to be the circumstances. So, I think that, in and of itself, creates a factual question. And I think that factual question is for the trier of fact.

> Like I said before, I have to view the testimony in the light most favorable to the non-moving party, the Prosecution. And it may well be that a jury or a trier of fact looking at this may well say that there was consent, impliedly. But I have to agree that based on what I've heard. . . there's not enough really to grant a motion to dismiss.

> So your motion is denied.

*Id.* at 63-64.

Judge Bokos, therefore, set the matter for trial on July 21, 2008.

On the day on which trial was scheduled, however, because all of the officers involved in Alman's arrest did not appear in court, Judge Bokos dismissed the assault and battery charge, without prejudice.[16]  The City Attorney's office did not re-bring the charge.

## PLAINTIFFS' COMPLAINT IN THIS LAWSUIT

On September 27, 2008, Plaintiffs filed the instant Section 1983 action.  In their 12-count Amended Complaint, Plaintiffs assert eight counts on behalf of Plaintiff Alman (Counts I-VIII); three counts on behalf of Plaintiff Barnes (Counts IX-XI); and one count on behalf of Alman, Barnes and The Triangle Foundation (Count XII), and allege in these various counts, claims under the First, Fourth, and Fourteenth Amendments, and under Michigan state law.

### Alman's Claims

(1)  Fourth Amendment Claims

In Count I, Plaintiffs allege that Deputy Reed did not have probable cause to arrest Plaintiff Alman for accosting and soliciting or CSC4 and, therefore, violated Alman's rights under the Fourth Amendment.  Plaintiffs also claim that Sergeant Swope is liable to Plaintiff Alman under Section 1983 on a "failure to train" theory because he allegedly

---

[16]  Officer Thivierge testified that on July 21, 2008 he was in circuit court for a trial on a narcotics case, *see* Thivierge Dep., p. 80, and though Deputy Reed recalled that July 21st was the date set for trial at the conclusion of the hearing on Alman's motion to dismiss, he assumed he would get a trial subpoena, but never got one.  Reed Dep., p. 91.

failed to instruct Defendants Reed and Buffa as to the elements of crimes for which they were arresting citizens. (Count II). Plaintiffs further allege a "failure to train" policy or practice claim against Wayne County and the City of Westland (Counts III and IV). In Count V, Plaintiffs allege that the City of Westland is liable to Plaintiff Alman for violation of his property rights under the Fourth Amendment because an earring he was wearing when he was taken into custody was taken from him and not returned.

 (2) <u>Fourteenth Amendment Claim</u>

 In Count VI Plaintiffs claim that Plaintiff Alman was singled out for arrest and prosecution based on his sexual orientation, and therefore, allege that all of the Defendants are liable to Plaintiff Alman for violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs further allege that all of the Defendants conspired with one another to violate Alman's equal protection rights and are, therefore, liable to Alman under 42 U.S.C. § 1985(3) (Count VII).

 (3) <u>State Law Malicious Prosecution Claim</u>

 In Count VIII, Plaintiffs allege that (a) Defendant Reed is liable to Plaintiff Alman for malicious prosecution for initiating criminal proceedings against him without probable cause for soliciting and accosting and for CSC4 and (b) Defendant Thivierge is liable to Alman for issuing Alman a ticket for violation of Westland's disorderly conduct and assault and battery ordinances.

<u>Barnes's Claims</u>

(1)  Fourth Amendment Claims

In Count IX, Plaintiffs claim that Plaintiff Barnes's Fourth Amendment rights were violated by Wayne County and the City of Westland for seizing and impounding his car without probable cause to believe that a crime within the scope of Michigan's Nuisance Abatement Law had been committed.  (Plaintiffs further alleged in their Complaint that Wayne County and the City of Westland conspired with one another to violate Barnes's Fourth Amendment rights and are, therefore, liable to Barnes under 42 U.S.C. § 1985(3).  (Count X).  However, in their Response Briefs, Plaintiff Barnes agreed to dismiss his Conspiracy Claim.  *See* Plaintiffs' Response to County Defendants' Motion, Dkt. # 47, pp. 42-43; Plaintiffs' Response to City Defendants' Motion, Dkt. # 48, p. 37.  Therefore, Count X will be dismissed.)

(2)  State Law Claim

In Count XI, Plaintiffs allege that Wayne County's use of the impoundment process in impounding Plaintiff Barnes's car under Michigan's nuisance abatement laws was not a legitimate use of the process, and, therefore, the County is liable to Barnes for abuse of process.

Finally, Count XII contains a claim brought on behalf of all three Plaintiffs -- Alman, Barnes and The Triangle Foundation.  In this Count, Plaintiffs allege that at the time of his arrest, Plaintiff Alman was engaged in speech and associational activity that is protected under the First Amendment, and that the conduct of the Defendants, in

arresting, ticketing and prosecuting Alman, and in impounding Plaintiff Barnes's vehicle, would chill the members of The Triangle Foundation from engaging in the same type of protected activity in public parks.

Discovery in this case was extensive and now has closed. Defendants now move for summary judgment and dismissal of all of Plaintiffs' claims.

A. <u>STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT</u>

Summary judgment is proper "'if the pleadings, discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c)(2).

As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). However, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must -- by affidavits or as otherwise provided in [Rule 56] -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, all affidavits "must be made on personal knowledge, set out facts that would

20

be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find" for the nonmoving party, the motion should be granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Co.*, 475 U.S. 574, 587 106 S.Ct. 1348, 1356 (1986); *Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). The Court will apply these standards in deciding the motions for summary judgment in this case.

B.    <u>PROBABLE CAUSE EXISTED FOR ALMAN'S ARREST</u>

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged violation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988). The plaintiff must establish both that (1) he was deprived of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law. *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail. *See id.* at 375.

Plaintiffs' claims in this Section 1983 action hinge on the argument that Alman was arrested without probable cause, in violation of the Fourth Amendment. Therefore, it is logical for the Court to begin its analysis there.

The Fourth Amendment of the United States Constitution guarantees that "[t]he right of people to be secure in their persons. . . against unreasonable seizures. . . shall not be violated." U.S. Const., amend. IV.  However, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed," *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588 (2004), and the "validity of the arrest does not depend on whether the suspect actually committed a crime." *Michigan v. DeFillippo*.  443 U.S. 31, 36, 99 S.Ct. 2627 (1979). Accordingly, "[i]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir.1999)). The Supreme Court "repeatedly has explained that 'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *DeFillippo*, 443 U.S. at 37, 99 S.Ct. at 2632. )); *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir.2001) ( "A police officer has probable cause if there is a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime.")  Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.  *Devenpeck, supra*.

Of course, "[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *DeFillippo*, 443 U.S. at 36, 99 S.Ct. at 2631. Plaintiffs in this case base their claim that Alman was unlawfully arrested on the argument that the facts surrounding Alman's arrest would not support a CSC4 charge under Michigan law. As noted above,

> (1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another with another if any of the following circumstances exist:
>
> * * *
>
> (b)(v) When the actor achieves the sexual contact through concealment or **by the element of surprise**.

M.C.L. 750.448(1)(b)(v).

"Sexual contact" as used in this statute "includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being. . . done for a sexual purpose. . . ." M.C.L. § 750.520a(n).

Plaintiffs do not dispute that "a reasonable officer could have interpreted Randy Alman's touching [of Deputy Reed] as sexual contact [as defined] under the statute." *See* Plaintiff's Response to County Defendants' motion [Dkt. # 47] p. 22. Rather, they argue that to constitute a crime, the touching has to be accomplished through the use of "physical force or physical violence." *Id.* In making this argument, Plaintiffs rely upon

23

the Michigan Court of Appeals' decision in *People v. Berlin*, 202 Mich. App. 221, 507 N.W.2d 816 (1993).

In *Berlin*, the complainant had been a patient of the defendant, a seventy-three year-old-gynecologist, for about thirty years. At the preliminary examination, she testified that, following a post-examination consultation in the defendant's office, when she was fully dressed, the defendant hugged and kissed her as usual, but then took her hand and placed it on his crotch, over his clothes and lab coat. She realized that he was aroused and quickly removed her hand. The prosecutor argued that this behavior constituted fourth-degree criminal sexual conduct and that the district court abused its discretion in finding insufficient evidence to bind defendant over for trial. The court disagreed, explaining,

> The section of the statute under which defendant was charged defines fourth-degree criminal sexual conduct as engaging in "sexual contact" with another person where "[f]orce or coercion is used to accomplish the sexual contact." M.C.L. § 750.520e(1)(a) [now subsection (1)(b)]. "Force or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(i) to (iv)." These circumstances are: (i) actual application of physical force or physical violence, (ii) threatening to use force or violence, (iii) threatening to retaliate in the future, and (iv) when the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable. M.C.L. § 750.520b(1)(f)(i)-(iv) [now § 520e(1)(b)(i)-(iv)].

> Here, the prosecutor claims that defendant's conduct constituted an actual application of physical force or physical violence and therefore it is covered by subsection a as a matter of law. The prosecution explains that it necessarily took some "physical force" to move the complainant's hand to defendant's crotch. We disagree.

24

Words used in a statute should normally be given their plain and ordinary meanings. M.C.L. § 8.3a; M.S.A. § 2.212(1). Further, where examples of what is included in a definition are given, the word is presumed to include only things of the same kind, class, character, or nature unless a contrary intent is evident. [Citation omitted.]

"[F]orce" is defined by Webster's Third New International Dictionary, Unabridged Edition (1964), as, among other things, "strength or energy esp. of an exceptional degree: active power: vigor" and is also defined as "power, violence, compulsion, or constraint exerted upon or against a person or thing." Similarly, the fifth edition of Black's Law Dictionary defines "power" as "[p]ower dynamically considered, that is, in motion or in action; constraining power, compulsion; strength directed to an end." . . .

This Court has found force or coercion where a defendant drove a thirteen-year-old complainant to a secluded park, ostensibly so she could baby-sit his children, and then touched her breasts, legs, stomach, and back, ignoring her request that he stop. *People v. McGill*, 131 Mich. App. 465, 468-469, 346 N.W.2d 572 (1984). The Court found that, considering the disparity in age, size, and strength between the defendant and the victim, and considering the remote location, the defendant's behavior was "sufficient to create a reasonable fear of dangerous consequences." *Id*. at 472, 474, 346 N.W.2d 572 (adopting the definition of force or coercion contained in CJI 20:5:3, now CJI2d 20.15).

In contrast, force or coercion was not found where a defendant placed his hand on the victim's crotch while she was sleeping and removed it when she awoke and rolled over to turn on the lights. *People v. Patterson*, 428 Mich. 502, 524-528, 410 N.W.2d 733 (1987). The Court found that "the Legislature did not intend the defendant's conduct to come within the definition of force or coercion in subsection (1)(a) [now (1)(b)] of the fourth-degree criminal sexual conduct statute" because it "intended to treat sexual assaults accomplished by force or coercion separately from assaults on physically or mentally incapacitated victims," which is forbidden by M.C.L. § 750.520e(1)(b) [now (1)(c)]. 428 Mich. 525-527, 410 N.W.2d 733. . . .

The Patterson Court also noted that the Legislature deliberately omitted from the definition of force or coercion applicable to fourth-degree

25

criminal sexual conduct those assaults that are accomplished "though concealment or by the element of surprise." *Id*. at 527, 410 N.W.2d 733. Such assaults, the Court noted, constitute force or coercion for purposes of first-, second- and third-degree criminal sexual conduct only. *Id*. Thus, the Court declined to allow the prosecutor to satisfy the force or coercion requirement by proving concealment or surprise. *See Patterson, supra* at 527-528, 410 N.W.2d 733. Likewise, we must be careful not to nullify the Legislature's exclusion of the provision for concealment or surprise with an overly broad reading of the phrase "force or coercion."

Here, complainant testified that defendant "took" her hand and "placed it" on his crotch. She stated that he did not grab it or pull it and that he did not hurt her. She also testified that he did not resist at all when she pulled her hand away and that he did not threaten her.

In light of the ordinary meaning of the words "force or coercion," of the examples given in subsections i through iv of the statute, and of the Court's interpretation, we believe that the district court did not abuse its discretion in finding that the force or coercion required by the statute was absent in this case. To hold otherwise would be to ignore the Legislature's exclusion of the concealment or surprise provision from the fourth-degree criminal sexual conduct statute.

202 Mich. App. 222-6, 507 N.W.2d 817-9.

Plaintiffs contend that in light of the Michigan court's decision in *Berlin*, a prudent officer could not reasonably believe that Alman accomplished the touching by force or coercion, and, therefore, Deputy Reed did not have probable cause to arrest Alman for CSC4.

There is a major flaw in Plaintiffs' argument -- they overlook the fact that in 1994 -- a year **after** the *Berlin* decision -- the Michigan legislature amended Section 520e specifically to add to the statutory definition of "force or coercion" sexual contact accomplished "through concealment or by the element of surprise." *See* Historical and

Statutory Notes following M.C.L. § 750.520e.  It was only because Section 520e's definition of force or coercion at the time of the *Berlin* decision did not include concealment or surprise that the Court of Appeals determined that the circuit court did not err in finding that there was insufficient evidence to bind Berlin over for trial. Therefore,  the *Berlin* decision no longer has any applicability in this context.

Under the plain language of the statute -- as it now exists and as it existed at the time of Plaintiff Alman's arrest in 2007 -- physical force is not required "when the actor achieves the sexual contact through concealment or the element of surprise."

Here, Plaintiff Alman admits that he was having a "sexually flirtatious conversation" with Deputy Reed when he leaned forward and touched the front of Deputy Reed's crotch.  Reed testified  that Alman's actions surprised him and he backed away.  These facts and circumstances are sufficient to warrant a reasonable person believing that Alman committed Fourth Degree Criminal Sexual Conduct under then existing Michigan law.

Alman was also originally charged with "accosting and soliciting," which under Michigan law is "accosting, soliciting or inviting another person in a public place. . . by word, gesture or other means. . . to do any lewd or immoral act."  M.C.L. § 750.448. Plaintiffs make no substantive argument challenging probable cause with respect to this charge.  Plaintiffs' only argument is that Deputy Reed testified in his deposition that his thinking with respect to the inclusion of this charge was "we let the Prosecutor sort that

out if they wanted to go with something like that." [Reed Dep., p. 53.] But, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford, supra*, 543 U.S. at 153, 125 S.Ct. at 593. The Fourth Amendment probable cause inquiry is governed by a purely objective standard, and depends solely "upon the reasonable conclusion to be drawn from the *facts* known by the arresting officer at the time of the arrest." *Id.* (emphasis added). Thus, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id*.

Plaintiff does not dispute in this case that he was in a public park and engaged in a conversation of a sexual nature with Deputy Reed when he leaned forward and touched Deputy Reed on the front of his crotch. An officer in Deputy Reed's position could reasonably have interpreted Alman's actions as an invitation to do a "lewd" act. Therefore, probable cause existed to support the charge of accosting and soliciting.

Plaintiffs argue that Alman's arrest was also unlawful because the Wayne County Prosecutor had an explicit policy governing the prosecution of certain sexual conduct offenses and claim that, pursuant to that policy, Defendants should have known that the Prosecutor would not prosecute Alman because Deputy Reed was acting as a "decoy." The policy upon which Plaintiffs rely, however, says nothing about "decoy" operations. *See* Plaintiffs' Ex. J. More importantly, the specific portion of the policy upon which Plaintiffs rely addresses only charges of indecent exposure pursuant to MCL 750.335a

and disorderly person-obscene conduct pursuant to MCL 750.167(f). The provision

relied upon by Plaintiffs states:

Indecent Exposure/Obscene Conduct

> An unsolicited sexual act or exposure to a member of the public or an
> undercover police officer will bring a misdemeanor charge of indecent
> exposure pursuant to MCL 750.335a or disorderly person-obscene conduct
> pursuant to MCL 750.167(f). **Charges will not be pursued by this office
> if the officer's conduct was designed to make the individual believe the
> act was invited or consensual.**

Nothing in this policy pertains to charges of CSC4 pursuant to M.C.L. § 750.520e

or "accosting or soliciting" pursuant to M.C.L. § 750.448.[17]  Therefore, Plaintiffs'

argument that a reasonable officer would have known not to charge Alman with CSC4 or

accosting or soliciting because a decoy was used in his arrest is without merit.

Finally, to the extent that Plaintiffs argue that Defendants lacked probable cause to

charge Alman with violation of Westland's disorderly person and assault and battery

ordinances, Officer Thivierge, who wrote the appearance ticket,[18] testified that he had 13-

---

[17]  Although Alman was charged with violating Westland's disorderly conduct
ordinance, which is substantially similar to M.C.L. § 750.167, the Wayne County
Prosecutor's policy specifically states that it does not apply to the enforcement of
municipal ordinances. *See* Plaintiffs' Ex. J.

[18]  To the extent that Plaintiffs argue that Officer Thivierge was not authorized to
issue the appearance ticket because the alleged misdemeanor offenses did not occur
within his presence, and, therefore, Alman's arrest was constitutionally invalid, the very
authority relied upon by Plaintiffs, *United States v. Marls*, 227 F. Supp. 708, 712 (E.D.
Mich. 2002), belies their argument.  In *Marls*, the court held that although the
defendant's misdemeanor arrest may have been statutorily invalid under Michigan law
because the officer who arrested the defendant did not personally and individually
witness the commission of the offense, the statutory invalidity did not render his arrest

plus years of police experience, and based upon that experience and the facts surrounding Alman's arrest, i.e., Alman's touching of Deputy Reed on the front of his crotch, he believed the elements of Westland's disorderly person ordinance were met. That ordinance provides, in relevant part:

> (a) It shall be a misdemeanor for any person to be a disorderly person.

> (b) A person is a disorderly person if the person is any of the following:

> * * *

> (6) A person who is engaged in indecent or obscene conduct in a public place.

Westland City Ordinances, Sec. 62-97. Contrary to Plaintiffs' assertions, nothing on the face of this ordinance requires indecent exposure or the application of physical force, and Plaintiffs have come forward with no authority requiring such a showing for a violation of the ordinance. Plaintiffs make no other argument for lack of probable cause to charge Alman under this ordinance.

Based upon the facts and circumstances presented, the Court finds sufficient probable cause existed to charge Alman under this ordinance. That the municipal court later dismissed the charges does not affect the probable cause finding. Judge Bokos did not make a probable cause finding in ruling on Alman's motion to dismiss. In dismissing

---

constitutionally invalid under the Fourth Amendment. Information communicated to the arresting officer by other officers was sufficient to establish "a probability or substantial chance of criminal activity," and, therefore, there was probable cause under the Fourth Amendment for the officers' detention of Defendant for the purpose of issuing an appearance ticket or effecting a misdemeanor arrest. *Id.* at 714 (citation omitted).

the disorderly person charge, the state judge, in fact, explicitly stated that in doing so, he was relying upon Alman's attorney's statement of the facts, not on any independent evaluation of the evidence.  *See* 5/20/08 Tr., p. 7.  Though testimony was taken after the state judge dismissed the disorderly person charge, the judge's findings after hearing the testimony addressed only the assault and battery charge.  The judge found that issues of fact required that the assault and battery charge be submitted to a jury.  Under these circumstances, Judge Bokos's dismissal of the disorderly person charge can have no retroactive impact on the validity of a probable cause determination made prior to an arrest.  *See Ross v. Duggan*, 402 F.3d 575, 585 (6th Cir. 2004 (citing *Criss v. City of Kent*, 869 F.2d 259, 262 (6th Cir. 1988)).

Similarly, the dismissal of the Westland battery charge on the date set for trial does not mean the Defendants lacked probable cause to bring the charge.  The charge was dismissed, without prejudice, because of the non-appearance of Deputy Reed and Officer Thivierge.  *See Ross v. Duggan, supra* (dismissals of criminal prosecutions compelled by the arresting officer's failure to appear at defendants' trial does not affect pre-arrest probable cause determination.)

In any event, probable cause to believe that a person has committed *any* crime will preclude an unlawful arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause, *see Devenpeck v. Alford*, *supra*, 543 U.S. at 153, 125 S.Ct. at 593-94; *United States v. Harness*, 453 F3d 752, 755 (6th

Cir. 2006) ("[K]nowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendants." *Id.* (citation omitted)); *Leonard v. Robinson*, 2005 WL 5352521 at *5 (E.D. Mich. 2005)("In light of this Supreme Court ruling [in *Devenpeck*], Plaintiff's Fourth Amendment claim in this case is defeated so long as Defendant can identify any legal basis for Plaintiff's arrest under the facts known to Defendant at the time."), *rev'd on other grounds*, 477 F.3d 347 (6th Cir. 2007); *see also United States v. Jones*, 432 F.3d 34, 41 (1st Cir.2005) (citing *Devenpeck* for the proposition that the probable cause inquiry is not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objective provided probable cause to arrest).

*Devenpeck* and its progeny control here.[19]  An arrested individual is no more seized when he is arrested on two, three or four grounds rather than one; and so long as there is a reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed.  *See Devenpeck*, 543 U.S. at 153-55, 125 S.Ct. at 594.

Because, as discussed above, the Court finds that sufficient probable cause existed for the arrest of Plaintiff Alman, there was no violation of Alman's Fourth Amendment rights.  Accordingly, Plaintiffs' claim against Defendant Reed in Count I of the First

---

[19]  The Court notes that unfortunately, none of the parties even cited *Devenpeck* in any of their briefs.

Amended Complaint will be dismissed.  The Court's determination with regard to probable cause also necessarily dictates the dismissal of Plaintiffs' failure to train claims in Counts II, III, and IV.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  In *Heller*, the Supreme Court held that a municipal entity cannot be held liable under a *Monell*[20] theory where there is no underlying constitutional violation by the individual officer.  The Court specifically held:

> If a plaintiff has suffered no constitutional violation at the hands of the individual police officer, the fact that the department regulations might have authorized use of unconstitutionally excessive force is quite beside the point.

*Id.  See also Claybrook v. Birchwell*, 199 F.3d 350, 361 (6th Cir. 2000); *Ross v. Duggan*, 492 F.3d 575, 589-90 (6th Cir. 2004) (holding, as a matter of law, that because Section 1983 plaintiffs could not prove that they suffered any constitutional tort, no liability could be imposed upon the municipality or the city and county policymakers based on allegedly unconstitutional policies, practices and procedures); *S.P. v. City of Takoma Park*, 134 F.3d 260, 272 (4th Cir. 1998) (assuming training of officers was unconstitutional, city could not be held liable where no constitutional violation by officers occurred).

Likewise, Plaintiff Alman's Fourth Amendment claim against the City of Westland in Count V for the unlawful seizure of his property when he was booked following his arrest must fail as he was not unconstitutionally seized.  Furthermore,

---

[20]  *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1985).

Alman's claim that Officer Thivierge threw away his earring when he booked him is factually unsupported. Thivierge did not book Alman; Officer Yudt did. Thivierge stayed in the park with the members of the MSET team and continued their undercover operation while Officer Yudt transported Alman to the station and booked him. *See* Thivierge Dep., p. 54. Indeed, at his deposition, when questioned about his earring, he testified that the earring, along with rings that he was wearing and cash he was carrying were removed when he was booked. Alman Dep., p. 90. He testified that all of these items placed in an envelope and that when he was released, everything was returned to him except the earring, which he claims "was thrown away." *Id.* at 91. However, when asked who threw it away, he testified, "I don't remember who," but added, "I believe it was him [pointing to Officer Thivierge]. *Id.* Such conjecture is insufficient to create an issue of fact. In any event, Alman is not suing any individual officer for the seizure of his earring. He is only suing the City of Westland and the City cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978). Count V of Plaintiffs' First Amended Complaint, therefore, will be dismissed.[21]

The Court's finding of probable cause also mandates the dismissal of Plaintiff Alman's malicious prosecution claims. To establish a claim of malicious prosecution under Michigan law, a party must show that (1) a defendant initiated a criminal

---

[21]   The Court expresses no view as to whether Plaintiff Alman may have an administrative procedure or state law cause of action for return of his property.

prosecution against him, (2) criminal proceedings terminated in his favor, (3) **an absence of probable cause**, and (4) the action was undertaken with malice. *Matthews v. Blue Cross & Blue Shield of Michigan*, 456 Mich. 365, 378; 572 N.W.2d 603 (1998) (emphasis added). "[I]f it appear[s] that the defendant had probable cause the action must fail, no matter how wicked or flagitious may have been the real motive." *Radzinski v. Doe*, 439 Mich. 1037 n.4, 677 N.W.2d 796, 797 n.4 (2004) (*quoting Hamilton v. Smith*, 39 Mich. 222, 226 (1878)). Because Defendants had probable cause to arrest Plaintiff Alman, his malicious prosecution claims in Count VIII fail as a matter of law.[22]

Because there was probable cause to arrest Plaintiff Alman, the seizure of the Plaintiff Barnes's vehicle which Alman was driving at the time, was not unconstitutional. As the Sixth Circuit made clear in *Ross v. Duggan*, *supra*, where criminal arrests and affiliated civil nuisance-abatement property seizures are supported by probable cause, the

---

[22] To the extent that Alman is asserting a federal malicious prosecution in Count VIII, the result is the same. The Sixth Circuit has recognized a constitutional claim for malicious prosecution under the Fourth Amendment. *See Spurlock v. Satterfield*, 167 F.3d 995, 1005-07 (6th Cir.1999) (finding that malicious prosecution without probable cause violates rights clearly established under the Fourth Amendment); *see also Thacker v. City of Columbus*, 328 F.3d 244, 258-59 (6th Cir.2003) (following Spurlock, acknowledging there is "a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment") While the precise elements of a Fourth Amendment malicious prosecution claim have not been established, *see Thacker*, 328 F.3d at 259, some courts have incorporated the elements of the claim under the relevant state law. *See, e.g., Briner v. City of Ontario*, 370 F. App'x 682, 701-02 (6th Cir.2010). "[A]t a minimum," Plaintiff must show there was no probable cause to justify the prosecution. *Thacker*, 328 F.3d at 259. Because Plaintiff Alman cannot show the absence of probable cause, he cannot demonstrate any seizure in violation of the Fourth Amendment. Thus, the Court need not attempt to enunciate the other elements of a malicious prosecution claim here.

impounded vehicle owners' Fourth Amendment cause of action is unsustainable.

Therefore, Plaintiff Barnes's claims of violation of his Fourth Amendment rights in

Count IX will be dismissed.

In sum, based upon the Court's determination that the Defendants had probable

cause to arrest Plaintiff Alman, the Court will grant Defendants summary judgment on all

of the claims in Counts I, II, III, IV, V, VIII and IX of Plaintiffs' First Amended

Complaint.

C.    PLAINTIFF ALMAN HAS FAILED TO MAKE OUT AN EQUAL
      PROTECTION CLAIM

In Count VI, Plaintiffs allege that Defendants violated Plaintiff Alman's rights

under the Equal Protection Clause of the Fourteenth Amendment by targeting gay men in

local public parks for arrest and prosecution.

To make out an equal protection claim on the basis of selective enforcement, it is

fundamental that the plaintiff must demonstrate that someone similarly situated but for

the illegitimate classification used by the government actor was treated differently.

*Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir.2004).  Plaintiffs have made no attempt to

meet this requirement.  Indeed, the evidence produced by Defendants shows that

individuals have been arrested for heterosexual sexual activity in Wayne County parks, as

well.

To withstand summary judgment, Plaintiffs may not simply rely upon their bare

allegations and beliefs but must come forward with sufficient evidence that would create

an issue of fact.  Having failed to do so, Plaintiff Alman's Equal Protection claim must

fail.  Accordingly, Count VI of Plaintiffs' First Amended Complaint will be dismissed.

D.    PLAINTIFF BARNES FAILED TO STATE A VALID ABUSE OF PROCESS
      CLAIM

In Count XII, Plaintiff Barnes asserts a claim of abuse of process by Defendant

Wayne County regarding the seizure and impoundment of his vehicle.  To make out a

claim of abuse of process under Michigan law, a plaintiff must establish (1) an ulterior

purpose, and (2) an act in the use of process that is improper in the regular prosecution of

the proceeding."  *Bonner v. Chicago Title Ins. Co.*, 194 Mich. App. 462, 472, 487

N.W.2d 807 (1992).  Thus, a meritorious abuse of process claim arises where a defendant

has used a proper legal procedure for an improper purpose given the intended use of that

procedure.  *Id.*  A bad motive alone will not establish an abuse of process; rather, the

plaintiff must set forth some corroborating act that demonstrates the ulterior purpose.  *Id.*

The only allegedly improper purpose asserted by Plaintiffs for the impoundment

of Barnes's car was "to elicit the payment of a $900 'settlement fee' in exchange for the

release of the vehicle."  [First Amended Complaint, ¶ 134.]  This was precisely the same

allegedly improper purpose asserted by the plaintiffs in *Ross v. Duggan*, 402 F.3d 575

(6th Cir. 2004), whose vehicles, like the vehicle owned by Plaintiff Barnes, were

impounded after they or the persons who were driving the vehicles with the owners'

permission were arrested for lewdness offenses.  The Sixth Circuit rejected the plaintiffs'

improper purpose arguments.  The Sixth Circuit found that the authority of law

enforcement operatives to impound implicated vehicles upon a showing of probable

cause and hold them pending payment of a settlement fee or the initiation of forfeiture

proceedings is implied in the broader statutory authority provided in M.C.L. § 600.3801

to take forfeiture of, and sell, abated nuisance vehicles. *Id.* at 582, 583.  Plaintiffs contend

that *Ross* was incorrectly decided.  This Court, of course, is without authority to disregard

or overrule Sixth Circuit law.

As set forth above, Plaintiff Alman's arrest for lewd conduct was supported by

probable cause.  Therefore, the vehicle he drove into the park was properly abated and

impounded. Therefore, there is no legal basis for Plaintiff Barnes's abuse of process

claim.


E.      PLAINTIFFS' FIRST AMENDMENT CLAIM LACKS MERIT

In Count XII, Plaintiffs allege that at the time of his arrest, Plaintiff Alman was

engaged in constitutionally protected speech and associational activity and that his arrest,

ticketing and prosecution, and the impoundment of the vehicle he was driving was done

in retaliation for engaging in such protected activity. Plaintiffs further allege that the

Defendants actions with regard to Plaintiff Alman would chill others, including members

of The Triangle Foundation, from engaging in the same type of protected activity in local

parks.  Besides these bare allegations, Plaintiffs have provided no legal authority for their

First Amendment claim.

Though Plaintiffs allege that Alman "was arrested because he was in a public park, appeared to be seeking to associate with other gay men, and made his sexual interest known to another apparently interested man (Reed)," as the facts set forth above demonstrate, speech and associational activities were not the basis of Plaintiff Alman's arrest -- it was his touching of Defendant Reed's groin that led to the charges against him. Plaintiffs have provided no law which suggests that unwelcomed physical sexual contact constitutes speech let alone that such activity warrants protection under the First Amendment.

Therefore, Plaintiffs' First Amendment claims in Count XII will be dismissed.[23]

F.    PLAINTIFFS' CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW

The Court having determined that Plaintiff's underlying constitutional claims lack merit, necessarily dictates that Plaintiff Alman's Section §1985 Conspiracy Claim in Count VII also be dismissed.[24]  (As indicated above, Plaintiffs have stipulated to the

---

[23]  The lack of substantive merit in Plaintiffs' First Amendment claims renders it unnecessary to address Defendants' argument that The Triangle Foundation lacks standing to join Plaintiff Alman in asserting this claim.  Further, the standing of Plaintiff Alman to assert this claim is not questioned.  The Supreme Court has held that, if constitutional and prudential standing can be shown for at least one plaintiff, the court need not consider the standing of the other plaintiffs to raise that claim. *See Village of Arlington Heights v. Metro. Housing Devel. Corp.*, 429 U.S. 252, 264, and n. 9 (1977); *see also Watt v. Energy Action Educational Foundation*, 454 U.S. 151, 160 (1981); *Horne v. Flores*, ___ U.S.___, 129 S.Ct. 2579, 2592-93 (2009).

[24]  The Court's determination that Plaintiffs have failed to establish that any constitutional right has been violated also renders further inquiries concerning the individual defendants' claim of qualified immunity unnecessary.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

dismissal of Plaintiff Barnes' Conspiracy Claim in Count X.)

<u>CONCLUSION</u>

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by the City of Westland, Officer Thivierge and Sergeant Swope **[Dkt. # 40]** and the Motion for Dismissal and Summary Judgment filed by Wayne County and Deputy Reed **[Dkt. # 42]** are GRANTED. Therefore,

IT IS FURTHER ORDERED that Plaintiffs' Complaint, in its entirety, is

DISMISSED, WITH PREJUDICE.

   Let Judgment be entered accordingly.


                    s/Gerald E. Rosen
                    Chief Judge, United States District Court

Dated:  October 7, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record
on October 7, 2010, by electronic and/or ordinary mail.

                    s/Ruth A. Gunther
                    Case Manager